**EXHIBIT 9**

```
                    DISTRICT COURT
                 CLARK COUNTY, NEVADA
```
FILED IN OPEN COURT
AUG 0 8 2006
SHIRLEY B. PARRAGUIRRE, CLERK
BY Linda Skinner
DEPUTY

| | |
|---|---|
| THE STATE OF NEVADA, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Case C160330 |
| ) | Dept. XIV |
| JUAN RICO DOSS, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

REPORTER'S TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE DONALD M. MOSLEY

December 12, 1999
9:00 a.m.
Department XIV

APPEARANCES:
For the State:
MS. DENAE ADAMS
MR. SCOTT MITCHELL
Deputy District Attorneys

For the Defendant:
MR. STAN WALTON
Attorney-at-Law

For Parole & Probation:
MR. FRIEDLANDER

Reported by:
Joseph A. D'Amato
Nevada CCR #17

**Page 1**

1  THE COURT: Calling C160330, State
2  versus Juan Rico Doss. Come forward.
3  Is Mr. Walton with us?
4  MR. DEFENSE: He's in Depart XI.
5  THE COURT: He was here earlier?
6  THE CLERK: Yes.
7  THE COURT: Have a seat. We'll trail
8  your matter.
9  [Matter trailed.]
10  THE CLERK: Page five for Mr. Walton.
11  THE COURT: Re-Callling case C160330,
12  State versus Juan Rico Doss. Let the record reflect
13  the presence of the Defendant, in custody,
14  Mr. Walton is counsel for the defense, Ms. Adams for
15  the State, Mr. Friedland for the Department of
16  Parole & Probation. The matter is set for
17  sentencing.
18  Mr. Walton, are you prepared to
19  proceed?
20  MR. WALTON: Yes.
21  THE COURT: Mr. Doss, do you have any
22  legal cause or reason why judgement should not be
23  pronounced against you at this time?
24  THE DEFENDANT: No, sir.
25  THE COURT: By virtue of your pleas of

**Page 2**

1  guilty you're adjudged guilty of the three counts
2  set forth in the Second Amended Information,
3  specifically Counts I and II, each charging you with
4  pandering of a child, felonies, and Count III,
5  living from the earnings of a prostitute, a felony
6  as well.
7  Mr. Friedland, does the department
8  have anything to add?
9  MR. FRIEDLAND: No, Your Honor.
10  THE COURT: Ms. Adams?
11  MS. ADAMS: This was negotiated.
12  Apparently the State agreed to no
13  opposition to concurrent time between Counts I and
14  II and the right to argue for consecutive time
15  between II and III. One and two together,
16  concurrent, and three.
17  THE COURT: Right.
18  MS. ADAMS: Based upon that the State
19  is going to ask that you run Counts I and II
20  concurrently and Count III consecutively to those
21  two counts, based upon the fact that we have a
22  Defendant here who has five prior felonies.
23  He's been part of the system since
24  1987. He has extensive drug charges and basically
25  turns around and commits different types of offenses

**Page 3**

1  that he's here for.
2  He's been on parole 11 times and 10
3  times revoked.
4  The Defendant is asking for probation
5  in this case which the State thinks is totally
6  outrageous and out of line, based upon the type of
7  offense that occurred.
8  The Defendant took girls from anywhere
9  from 13 to 17 year's old -- I think it was a total
10  of four -- and had them -- prostituted them. He
11  basically living off the earnings of these
12  prostitutes.
13  The thing that sticks out is the fact
14  that the Defendant admits that these girls were
15  prostitutes and he didn't do anything because they
16  were previously prostitutes.
17  There is a problem here. Number one,
18  the age. He's 31 year's old, and they were
19  runaways, but he's continued to keep these girls
20  under age into this life of prostitution.
21  He's got previous drug charges so he's
22  probably continuing to positively spoil their minds
23  as far as potentially with drugs.
24  There was some violence used against
25  one of the victims as stated in the PSI. Just the

**Page 4**

1  fact of his conduct, bringing them from California,
2  having them enter into prostitution in the State of
3  Nevada, additionally keeping this money that is made
4  and keeping them in this life of crime.
5  Based upon his record, which he admits
6  to, the state would ask that you follow the
7  recommendation as far as the maximum on Counts I and
8  II and run that consecutively to Count III.
9  He does admit to the culpability.
10  He's still somewhat in denial due to the fact he
11  says these girls were already prostitutes. Keep in
12  mind that these girls were under age the time. He's
13  a 31 year old man.
14  Submit it on that.
15  THE COURT: Mr. Doss, what would you
16  care to say?
17  THE DEFENDANT: Yes, Your Honor.
18  This crime -- this is an ongoing
19  behavior. What it is is, you know, I hooked up with
20  one girl that happened to be a prostitute and ended
21  up contributing to that lifestyle, you know,
22  thinking it was easy, fast, quick money, I guess,
23  you know, and um, it had nothing to do with drugs.
24  Drugs is past -- me selling drugs.
25  Upon hooking up with this one girl it led to other

**Page 5**

girls coming along and you know, um, I know they was under age and stuff, but the point I was trying to make is that, um, whether I met them or did not meet them they were going to continue to do what they had been doing.

We came out here to Las Vegas and I got arrested on a traffic violation and as I was in the city jail on the traffic violation. They happened to go out on they own while I was locked up, a whole day.

They went out on they own at which time they caught this case right here which brings me in front of you right now.

THE COURT: It's fair to say prior to that they were going out for you, right?

THE DEFENDANT: Yes. It was conspired among all of us, yes.

THE COURT: You were in jail, so they went out on their own -- that's what you're saying, but before that they were going out at your direction, right?

THE DEFENDANT: Yes.

THE COURT: Ms. Adams, I noted in the report that the Defendant has indicated these girls were involved in prostitution before he met them.

**Page 6**

That certainly does not absolve him of responsibility, I would agree, but that is a factor. I'm much, I think, less inclined to give leniency to someone who is turning 13, 14, 15 year old girls into hookers than I am with people who meet them on the street doing what they are doing, albeit at a tender age, and facilitate the continuation of that kind of activity.

You may or may not know. Obviously we don't have all the information we always want in these instances.

Is there any indication that any of these girls were not disposed to this kind of thing or was, whichever, before they met Mr. Doss?

MS. ADAMS: To be honest, I'm not sure of the specifics.

I know that several of them were runaways and in potential homes at the time that they came in contact with him.

Due to the age -- one was a 13 year old -- and basically coming out here and not being able to actually make any money, led me to believe maybe there wasn't any experience there as a prostitute.

There are statements in the PSI that

**Page 7**

one of them was unable to make any money or make bank for the Defendant.

I don't have any specifics as far as the rap sheets on the juveniles, Your Honor.

THE COURT: Yes, Mr. Doss?

THE DEFENDANT: Um, this situation right here as the girl said at the preliminary hearing, in the transcripts, it wasn't nothing forceful.

It wasn't like if you don't go out there and make me no money you get beat up. None of that.

You know, in that sort of lifestyle it tends to go both ways, because you had a female that they go out there and whether they going to be out there with a man or not, they going to do it, regardless.

It's sort of like a high to them. Who is out there looking the best? Who is doing the most?

That be they whole thing. It's like sometimes a man don't even have to recruit these girls.

She can just see him out there and him having this girl and she's friends with that girl so

**Page 8**

she wants to be with this girl, so to be with this girl she got to be with that girl's man.

It wasn't nothing forceful and it wasn't to a terminology to where I took all this money and it was for myself. As they all indicated, the majority of the money went on them every day. Wasn't no drugs involved, no alcohol involved.

It was just something we conspired on for us to make quick, fast money, which --

THE COURT: Particularly easy for you.

THE DEFENDANT: Yes.

THE COURT: Mr. Walton?

MR. WALTON: Mr. Doss has asked me to ask the court to consider granting him a term of probation. I left the jail about 10:30 last night.

One of the things I told him I don't think that's a realistic expectation based upon his record. He says "If you don't ask him, you know he is not going to give it to me."

I said you're right.

In answering a few of the court's concerns about the four juveniles, what's clear from the preliminary hearing transcript and from the police reports at the time the incidents occurred is that these four young girls were acting as

9

1  prostitutes in California before they got involved
2  with Mr. Doss and co-defendant Shauna Bailey.
3           Ms. Bailey testified that she began
4  doing this because it helped Mr. Doss get out of a
5  jail sentence before so she can earn bail money for
6  him on a previous occasion in Hollywood.
7           She recruited the young ladies.  She's
8  the one who taught them what to do, how to do it and
9  things of that nature.
10          As usual, the first peek through the
11 door gets the best deal.  She was given a
12 misdemeanor solicitation conviction and credit for
13 time served in exchange for her testimony against
14 Mr. Doss.
15          What I think happened in this case,
16 the State was so inclined to prosecute Mr. Doss that
17 they failed to help these girls out.  The girls were
18 held in custody in juvenile hall until they
19 testified at the preliminary hearing and released.
20          And if the Court recalls at the time
21 we were preparing for trial, three or four of the
22 girls were not available.  They couldn't be found to
23 come forward and testify.
24          The State could have taken that
25 opportunity to help these young ladies and give them

10

1  some counseling before they were released back on
2  the street.
3           They did attend classes while they
4  were in jail, but they didn't get the counseling
5  that was needed to get them out of this life.
6           I surrender.  I wave the white flag in
7  this case.  Mr. Doss isn't standing here with a
8  clean record.
9           He is not standing here as a person
10 who is innocent; but he told me one thing.  It rang
11 in my head.
12          He said on his prior occasions when he
13 got out of jail he felt like the system has done
14 this to me.  I'm going to get mine.  I want to get
15 fast money.
16          That's why he ended up getting right
17 back into trouble.  He was selling drugs.  He got
18 involved in other things, as indicated.
19          He does dispute a couple of the
20 arrests, but I don't have anything to the contrary
21 to go against what the reports say.
22          He indicated this is the time when he
23 gets a chance to say "Judge, give me an opportunity
24 to prove myself.  I've got all this time hanging
25 over my head."

11

1           The recommendation is to max him out.
2  Basically everything is a maximum penalty he could
3  get.  Under the circumstances, that's what the
4  recommendation calls for.
5           The State has stipulated to agree to
6  run concurrent on Counts I and II and they are
7  asking for consecutive time on Count III.
8           The Defendant is a father of six and
9  he was voluntarily paying child support before he
10 was incarcerated.  He says when he goes to prison or
11 jail he can't pay for his children.
12          When he's out, he was paying for them.
13 If the truth be known, this whole involvement from
14 my client in the situation was at a minimum of 10
15 days.
16          He met a couple girls, came on a bus,
17 went back with -- some more girls came in with him
18 and Ms. Bailey.
19          It's a situation for 10 days from
20 California coming to Las Vegas to the time he was
21 arrested on a traffic violation and the girls were
22 arrested by vice detectives.
23          It's not like he had some elaborate
24 scheme where he indulged in this type of activity
25 over an extended period of time.

12

1           With that, he's asked me to ask you
2  for probation.  That I have asked.
3           If the court is not inclined to do
4  that, I would be simply asking the Court to give him
5  the minimum terms on Count I and II which would be
6  12 to 48 on Counts I and II, and ask -- as the Court
7  recalls, during the negotiation stages in chambers
8  on Count III the Court told the State "Let's be
9  realistic about what you're going to get in this
10 case."
11          The court has been fair throughout the
12 whole proceedings.  You let Mr. Doss enter a plea to
13 this matter.
14          We were in the process of beginning to
15 pick the jury.  The Court has been fair.  Mr. Doss
16 appreciates that.
17          I told him of the court's concerns.  I
18 would ask the Court to give him the minimum
19 sentence, if you're inclined to give him a prison
20 sentence, and run all three concurrent.
21          Let the penalty fit the crime based on
22 what we have here.  There is no excuse for being out
23 there, having young children go out and sell their
24 bodies and you accept the proceeds of it.
25          He did not get them into the life of

**Page 13**

crime. As he indicated, they are probably still doing it. They could not wait to get out of jail, get on the plane and get back involved in what they were doing.

I've had contact through an investigator that for sure one of the young ladies is still engaged in solicitation of prostitution.

They need to get the counseling they can have, but they won't get it as long as they are on the street.

Thank you. I'd submit it.

MS. ADAMS: For clarification, you asked me a question regarding the young ladies, if they were involved in prostitution prior to meeting Mr. Doss.

Mr. Mitchell walked in the court room. He did the preliminary hearing and stated that the two younger ones had never been involved in prostitution.

That was the testimony at the preliminary hearing.

Additionally, the defendant's counsel stated it was a short period of time in which this activity took place. There was also information and testimony that the Defendant was in contact with

**Page 14**

some of these girls involved in the prostitution in California prior to coming to Las Vegas.

Additionally, I believe counsel made a comment about the state and having these girls in custody and not giving them counseling. These girls were -- belonged to homes in which they needed to be transported back to and released back to.

They were not wards of the State of Nevada. We had no control over that. They were here and were witnesses and kept to testify.

Based upon that, the State would stick with the Counts I and II being maximized and consecutive to Count III.

I don't think it should be minimized the fact maybe one or two were involved in prostitution previously, that someone else involved them in this conduct.

We're here for the Defendant who involved them in this conduct, the young girls that were not involved in this conduct.

I would submit it.

THE COURT: Anything you want to say about that, Mr. Doss?

THE DEFENDANT: Yes.

All of them was already engaged in

**Page 15**

prosecution. That's how I met them in the first place.

THE COURT: You were at the preliminary hearing, right?

THE DEFENDANT: Yes.

THE COURT: Is Ms. Adams correct that they testified these two younger girls were not?

THE DEFENDANT: No.

The two that I just spent three days prior to this happening, one of them had been doing this since she was 13. This is one of the 16 year old's. She said she been doing it since she was 13.

The one that came with her didn't come because of me. She came with her because of her.

She stated on the stand she had been in training, doing these activities with this girl that she came with, which was the 17 year old, and my attorney asked her what do you mean training?

How were you in training?

Did she tell you what you had to do in order to do all this?

She said yes.

She admitted that this other girl, which was the 17 year old, was teaching her and she even implied on one of her occasions out there where

**Page 16**

they robbed -- it states in the transcript where they robbed one of they so-called dates.

As my attorney was saying, um, it's two of them that's for sure that the whole time they was locked up and the whole time they got on the witness stand, they are not even who they say they are.

They are not even -- the names they charged me with is not even the people that they are. You know, they -- I mean, you know, they was released.

It was like, you know, you know, they come out here, they do, now, what they do and they can just go. Now they just, you know --

THE COURT: All right.

Ms. Adams, any further information on this?

MS. ADAMS: No, Your Honor.

THE COURT: Mr. Mitchell, do you have anything to add?

MR. MITCHELL: Yes, Your Honor.

If the Court is in any way going to base its sentence on the truthfulness of what Mr. Doss said, I would urge the Court to read the preliminary hearing transcript.

17

    The two younger girls were about this tall, were 12 and 13 when they came here. For Mr. Doss to say the 17 year old had been doing this since she was 13 -- that's the older girl -- there were five girls here and the younger ones were little, tiny girls that were not prior prostitutes before Mr. Doss ran into them, after they had escaped from a group home in California.
    They had run away and they were in the driveway of a friend's home when he pulled up, met them for the first time.
    For him to say they were prostitutes before that is impossible. He said himself he had only known them for three days.
    How does he know?
    They did not testify they had prior prostitution experience. The other old ones did, but these little girls had nothing of the sort.
    They specifically testified -- the littlest one, who is about four feet seven inches tall and looks 12 years old, she testified the first time she ever did this was at Mr. Doss's insistence.
    When he brought her to Las Vegas and when she wasn't making any money and expressed displeasure over this kind of lifestyle he struck

18

her.
    That came out at the preliminary hearing.
    If Mr. Doss wants to counter what came out at the preliminary hearing, he should have testified at the preliminary hearing. He's trying to say things not under oath at this point to minimize that damaging evidence.
    THE COURT: You indicated, Mr. Mitchell, that the testimony at the preliminary hearing was that the two other girls came out when they were 12 and 13.
    My information is that at the time of the offense they were 13 and 16.
    MR. MITCHELL: Um, well, I'm thinking of a blonde headed girl and two little girls.
    MR. WALTON: She was 17, 14, 15, and two 17 year old's.
    MR. MITCHELL: I don't think that's correct on the two younger ones. I haven't reviewed this since the preliminary, but I can picture the girls in my mind and they are two little girls that were -- the two that testified at the preliminary hearing, they were standing in the driveway in California when Mr. Doss pulled up and that was the

19

first time they ever met him.
    And he asked them if they wanted to go for a ride with him. That ride ends up going to Las Vegas. Whatever the ages of those two were, I will rest upon the record, whatever it says.
    THE COURT: Mr. Doss, did they testify at the preliminary hearing that one or two of these girls, at least, that you introduced them into this kind of lifestyle?
    Just answer my question yes or no.
    THE DEFENDANT: No.
    THE COURT: Did they or did they not testify in that way?
    THE DEFENDANT: No.
    THE COURT: I have the transcript right here. We'll continue the matter and I will review the transcript.
    Mr. Walton, before we recess on this matter is there anything else you want to say?
    MR. WALTON: If you'll continue it to early next week, that will accommodate my calendar.
    THE COURT: Ms. Adams, fine with you?
    MS. ADAMS: Yes.
    THE COURT: Tuesday or so.
    MR. WALTON: That's great.

20

    THE COURT: Good enough.
    THE CLERK: December 14, 9:00 a.m.

ATTEST that this is a true and complete transcript of the proceedings.

J.A. D'AMATO   CCR #17